UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN HAROLD ROGERS,<br><br>Defendant. | Case No. 25-cr-033 (DLF) |

### DEFENDANT'S OPPOSITION TO GOVERNMENT'S REQUEST
### FOR PRETRIAL DETENTION

The defendant has no criminal record and denies ever knowingly conspiring to assist the People's Republic of China ("PRC") in obtaining information that would damage the United States. The defendant's travel to China and his teaching there do not establish that he would flee the United States. On the contrary, the defendant's ties to the United States are much more significant than the government suggests to the Court. Moreover, there are measures that the Court can take that will guarantee that the defendant will not flee if released. They are discussed below.

### I.     The Defendant's Young Daughter

The government acknowledges that the defendant has four children living in the United States from a previous marriage and that he has a young daughter with his current wife. What the government does not say is that the defendant is the principal caretaker for his six-year-old daughter. His current wife, a Chinese woman whom he married in Hong Kong in 2018, is not fluent in English, which will make caring for their daughter all the more difficult. Consequently, the defendant has been responsible for all day-to-day care for his daughter including doctor's appointments, class registrations, play dates, and all of the other things necessary to the care of a first grader. It is the defendant who takes his daughter to the bus stop every morning and it is the

1

defendant who picks her up from the bus stop every afternoon.  The defendant guides her in all her other activities here in the United States.  The defendant was in fact returning from taking his daughter to the bus stop when he was arrested by FBI agents this past Friday.  The defendant is devoted to his daughter and would not desert her.

The government notes that the defendant sold a house he owned and moved his family into an apartment back in 2021, but this was during the time when the defendant and his wife did not know whether they planned to raise their family in the United States or China and the defendant's daughter was still a toddler.  As she has grown, the family calculus has changed as to where to live and how to provide more stability for her.  But the government apparently is unaware that on November 11, 2024, the defendant made a bona fide offer to purchase a new home here in Vienna, Virginia, with the intention to stay long term in the United States, provide consistency in education for his daughter, and to give more space for all of them to live together.  We can demonstrate to the Court exactly what the defendant has done in this regard.

## II.     The Defendant is an Academic – i.e., a Teacher

It is undeniable, and the defendant does not deny, that he was invited to teach at Fudan University in China to educate Chinese students on the economic system of the United States and some of its mechanics.  There is no law that prevents an academic from using his knowledge and experience to teach foreign students about the United States, its government, and its economic system.

The government relies in its Memorandum on a May 2, 2018, set of questions that a student asked his teacher to answer.  The government focuses on what it says are questions that

include requests for information that would be incredibly valuable to the PRC:

- Does the Fed be satisfied [sic] with the current trend of the dollar? What is the Fed's expectation for the future trend of the dollar? What measures is the Fed planning to achieve this Expectation? Is there a specific plan and timetable?

- How does the Fed evaluate the trade war with China proposed by Trump? Will the Fed adjust the monetary policy to cooperate with the trade war? What specific measures will the Fed take?

The government also emphasizes that the defendant's student messaged "I'm wondering if you could help us to collect answers from your colleagues or documents, and teach us when we me[e]t." The defendant was entitled to offer opinions in answering these questions and to talk with other experts in the course of teaching his students. Someone with the defendant's knowledge and experience could answer such questions without revealing what the government now claims are trade secrets.

According to the government, certain WeChat messages between the defendant and his students suggest a conspiracy:

> In September 2018, for example, the defendant responded to his handler about setting up a time for "teaching us" by stating in part: "But there has to be a lot more done to make this legitimate in the eyes of the Fed. Remember, it has to be teaching and not consulting. I am only allowed to teach." The defendant then proposed a series of steps, such as having a course title, having a list of students, "[e]ven if it is only 2 or 3," producing a syllabus, having exams and homework, and giving a grade. The defendant said: "I know this sounds like a lot. But think about what would happen if I was asked to produce information on any of these . . . items and I had no answer. That would cause me a lot of trouble!"

We submit that this demonstrates the defendant's commitment to do the teaching which he was hired to do—not to conspire with anyone. The same is true of other exchanges that the defendant had with his students that the government attempts to spin from teaching to conspiracy.

### III.     The Defendant Has Not Been a Fed Official Since 2021

The defendant has not been a Fed official since approximately May 2021 and apparently had little to no access to Fed documents since May 2020.  The trade secrets that the government specifically identifies and alleges were shared with agents of the PRC in the indictment are primarily from 2018 – 2019 (Indictment ¶ 10).  Various paragraphs from the indictment appear to imply that the defendant requested various documents from other Fed employees with the explicit understanding that these documents would be shared in China.  Paragraph 17(j) states defendant "emailed two colleagues at the FRB asking for information he could share on a trip to China . . . . In response on May 4, 2018, one of [defendant's] colleagues provided two pdfs . . . ."  One of these documents is what the government alleges defendant emailed to a co-conspirator.  (Indictment ¶17(n)).  Paragraph 17(t) states defendant "emailed a Senior Economist at the Federal Reserve seeking information to share with people in China . . . . the Senior Economist sent an email attaching two files to [defendant]."  Again, the government alleges that defendant provided these documents to a co-conspirator.  (Indictment ¶17(v)).  The government does not allege that specific Trade Secrets, i.e, the Trade Secrets identified in Paragraph 10, were ever provided to any agent of the PRC.  For example, Paragraph 17(qq) dealing with Trade Secrets 5 and 6 do not even allege that defendant even received them from former colleagues or forwarded them to anyone.

The government makes much of an interaction that allegedly occurred on June 19, 2019, see Indictment ¶17(mm) and this Memorandum at p. 9, where defendant provides a copy of the FOMC's public announcement, released at 2pm that day.  The government does not allege that defendant had an advanced copy or that even the copy provided was not the publicly available and published press release.  Rather that the defendant may have predicted what the FOMC might say, may well be within the defendant's knowledge and experience without any reliance on trade

secrets. The government fails to allege otherwise.

After that tenuous allegation there is no further claim of any solicitation of any trade secret from the Fed until the allegation regarding Trade Secrets 5 and 6 supposedly occurring on August 11, 2023, which the government does not even allege resulted in any transfer of information.

### IV. Suitable Alternatives to Detention

The government makes no mention in its Memorandum of alternatives to pretrial detention. The defendant respectfully suggests that a combination of alternatives would work to assure that flight is not a legitimate concern in this case. The defendant suggests the following for the Court's consideration:

1. Release on a bond to be secured by a cash sum.

2. Placing the defendant under the custody of a third person.

3. Requiring the defendant to report immediately upon release to 633 Indiana Avenue 9th Floor for GPS installation and High Intensity Supervision Program Orientation.

4. Denying the defendant access to the Internet while on release.

5. Requiring that the defendant be on GPS monitoring and subject to home detention, such that the defendant is restricted to his residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer.

6. Providing that the defendant may only leave his home when accompanied by the third-party custodian.

7. Requiring that the defendant's third-party custodian must make an in-person visit every morning and every evening with the defendant.

8. Requiring that the defendant must receive a mid-day phone call check-in from his third-party custodian each day. The call must take place between 1:00 p.m. and 2:00 p.m. each day.

9. Providing that the defendant must not contact any of the coconspirators or any potential witness in this case.

10. Imposing other conditions that will satisfy the Court that there is no genuine risk of flight.

Respectfully submitted,

/s/ Stephen A. Saltzburg
Stephen A. Saltzburg (D.C. Bar No. 156844)
2000 H Street, NW
Washington, DC 20052
Tel.: (202) 994-7089
Fax: (202) 994-9811
Email: sasaltz@law.gwu.edu

/s/ Jonathan K. Gitlen
Jonathan K. Gitlen (D.C. Bar No. 990918)
Law Office of Jonathan K. Gitlen PLLC
900 19th Street, NW, Suite 500
Washington, DC 20006
Tel.: (202) 568-5788
Fax: (202) 301-8556
Email: jonathan.gitlen@jgitlenlaw.com

*Counsel for Defendant*